ORDERED.

Dated: November 15, 2019

*Cynthia C. Jackson*
Cynthia C. Jackson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **CHAPTER 11** |
| **KJM CAPITAL TRANSPORTATION FUND, LLC, et al.** | **CASE NO.:   6:19-bk-06302-CCJ** |
| | **Jointly Administered**[1] |
| **Debtors.** _____/ | |
| **In re:** | **CHAPTER 11** |
| **SUNCO TRUCKING, LLC,** | **CASE NO.:   6:19-bk-06308-CCJ** |
| **Applicable Debtor.** _____/ | |

**THIRD INTERIM ORDER GRANTING DEBTOR'S EMERGENCY MOTION TO USE CASH COLLATERAL AND NOTICE OF CONTINUED HEARING**
**[Continued Hearing: November 22, 2019 at 10:30 AM]**

**THIS CASE** came on for a continued preliminary hearing on November 8, 2019 at 11:00 a.m. (the "Hearing") upon the *Emergency Motion for Authority to Use Cash Collateral and*

---

[1] Jointly administered cases: KJM Capital Transportation Fund, LLC, Case No. 6:19-bk-6302-CCJ; Gantt Trucking, LLC, Case No. 6:19-bk-6303-CCJ; Interide Transport, LC, Case No. 6:19-bk-6306-CCJ; Sunco Trucking, LLC, Case No. 6:19-bk-6308-CCJ; Cold Carrier Logistics, LLC, Case No. 6:19-bk-6312-CCJ; Gantt Holdings, LLC, Case No. 6:19-bk-6313-CCJ; and Watkins Refrigerated, LLC, Case No. 6:19-bk-6314-CCJ.

*Request for Emergency Preliminary Hearing* filed by **SUNCO TRUCKING, LLC** (the "Debtor") on September 30, 2019 (Doc. No. 7) (the "Motion"). Upon consideration of the Motion, the evidence presented at the Hearing, the arguments of counsel for the Debtor and Santander Bank, N.A. ("Santander"), it is

**ORDERED:**

1. The Motion is **GRANTED IN PART** on an interim basis as expressly provided for and subject to the terms and conditions set forth herein.

2. Debtor is hereby authorized to use to use cash collateral (as such term is defined in 11 U.S.C. § 363(a), in which Santander asserts a lien or security interest ("Cash Collateral")) on an interim basis only through and including November 22, 2019, subject to the terms and conditions set forth herein, and in accordance with the budget attached hereto as <u>**Exhibit A** (the "Budget"), plus an amount not to exceed ten (10) percent, per week, of the line item "Total Operating Activities" set forth in the Budget.</u>[2] Except as specifically authorized in this Order, the Debtor is prohibited from the use of Cash Collateral.

3. The Debtor shall timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the orders of this Court.

4. Pursuant to a Restructuring and Forbearance Agreement dated as of June 5, 2019, as amended (the "Forbearance Agreement"), the Debtor acknowledged, *inter alia*, that Santander's Loan Documents and the Debtor's Obligations to Santander, are valid, binding and enforceable, without setoff, deduction, claim, counterclaim or defense of any kind, and that Santander has valid, enforceable and perfected first priority security interests in and liens on the Collateral, as such

---

[2] Any Cash Collateral previously used by the Debtor with Santander's consent (including, without limitation, up to $503,667.00 consented to by Santander for the emergency payment of post-petition fuel) shall be accounted for and treated as the use of Cash Collateral under the Budget.

capitalized terms are defined in the Forbearance Agreement (the "Acknowledgements"). Any post-petition objection by the Debtor to all or any portion of the Acknowledgements shall be made no less than five (5) business days prior to a final hearing on the use of Cash Collateral. The Acknowledgements are without prejudice to the rights of any other party in interest including any committee of creditors appointed in the Debtor's chapter 11 case.

5. In addition to the protections under 11 U.S.C. § 552(b), as adequate protection for the Debtor's interim use of Cash Collateral pursuant to this Order, Santander shall have a perfected post-petition lien and security interest in Cash Collateral and other property of the Debtor having the same validity and priority as its pre-petition liens and security interest in Cash Collateral and such property, without the need to file or execute any documents as may otherwise be required under applicable non-bankruptcy law, provided, however, that such lien shall not extend to any avoidance action of the Debtor's estate under §§ 544, 545, 547, 548, 550 and 553, and all proceeds thereof, except that Santander's lien shall extend to any transfers of Cash Collateral avoided and recovered under §§ 549 and 550. Santander's liens against Debtor's Cash Collateral shall extend to any account of the Debtor (including, without limitation, debtor-in-possession accounts) holding such Cash Collateral, regardless of whether Santander has control over such account. Notwithstanding the automatic perfection of the liens and security interests granted pursuant to this Order, Santander is authorized, but not required, to file or record financing statements, notices of lien and other similar instruments in any jurisdiction, or to take any other action it deems necessary or appropriate to validate or perfect such liens and security interests including filing or recording a copy of this Order.

6. Santander shall have the right to assert a super priority administrative expense claim pursuant to 11 U.S.C. § 507(b) to the extent of any diminution in value of its collateral arising

from the imposition of the automatic stay or the Debtor's post-petition use of its collateral including, without limitation, Cash Collateral.

7. As conditions to its interim use of Cash Collateral, and as further adequate protection to Santander, the Debtor shall:

(a) Provide Santander with any proposed modifications to the Budget or new budgets at least three (3) business days prior to any continued hearing on the Debtor's Motion;

(b) Provide Santander with the following weekly reports and information by 5:00 PM EST each Wednesday (reporting for the immediately prior week) via electronic mail to Santander's counsel, beginning on October 23, 2019 (reporting for the prior week ending October 18, 2019) and continuing for all subsequent applicable weeks:

(i) Updated accounts receivable reports, including actual Invoices Generated, Cash Receipts, and accounts receivable agings, comparing the Debtor's actual weekly Invoices Generated and Cash Receipts to the Budget's projected weekly Invoices Generated and Cash Receipts, showing a percentage variance for each category; and

(ii) Updated borrowing base certificates,[3] which shall be consistent with Debtor's prepetition practice and the requirements of Santander including any required documentation or supporting information, which shall compare the sum of the actual Ending Balance of Accounts Receivable plus the actual Ending Depository Balance to the Budget's projected Ending Balance of Accounts Receivable plus Ending Depository Balance;

(c) Allow Santander and any of its representatives, agents, and/or advisors to conduct periodic field exams of the Debtor and its property during normal business hours and on not less 7-days' notice to the Debtor;

(d) Allow Santander and any of its representatives, agents, and/or advisors to continue to issue periodic account receivable verifications to the Debtor's vendors, suppliers, customers, and independent contractors;

(e) Allow Santander and any of its representatives, agents, advisors, and/or advisors, including appraisers, reasonable access to the Debtor and its property for purposes of conducting any appraisals or inspections during normal business hours and on not less than 7-days' notice to the Debtor; and

---

[3] The amounts set forth on the borrowing base certificates submitted to Santander shall be for informational purposes and shall not affect or impair the Debtor's ability to use Cash Collateral as provided for under the terms of this Order.

(f) Maintain insurance coverage for its property in accordance with its obligations under its loans and security agreements with Santander. The Debtor shall provide Santander proof of insurance, as set forth in the Forbearance Agreement, (i) listing Santander as loss payee and (ii) including Santander as an additional insured and certificate holder under the policy, within 7 days of the date of the entry of this Order.

8. Unless waived by Santander in writing, the Debtor's authorization to use Cash Collateral shall immediately terminate upon the occurrence of any of the following events (an "**Event of Default**"):

(a) The sum of the actual Ending Balance of Accounts Receivable plus the actual Ending Depository Balance for any week is less than ninety (90) percent of the sum of such amounts as shown on the Budget;

(b) Further authorization to use Cash Collateral is not extended at the continued hearing or is terminated by the Court;

(c) The Debtor fails to comply in any material respect with any of the terms or conditions of this Interim Order including, without limitation, the conditions set forth in enumerated paragraph 7 (above);

(d) The Debtor asserts in any pleading, motion, or objection filed in any court that any material provision of this Interim Order is not valid or binding for any reason;

(e) Any material provision of this Interim Order shall, for any reason, cease to be valid and binding without the prior written consent of Santander;

(f) If the case is converted to a case under chapter 7 of the Bankruptcy Code;

(g) If the Debtor files a motion or other pleading seeking dismissal of this case under section 1112 or any other section of the of the Bankruptcy Code;

(h) A trustee under chapter 11 of the Bankruptcy Code, or a responsible officer or an examiner with enlarged powers relating to the operation of the Debtors' business, is appointed under section 1106 of the Bankruptcy Code; or

(i) If this bankruptcy case is otherwise dismissed or converted.

9. Upon an Event of Default, either the Debtor or Santander may seek emergency relief from the Court including, without limitation, in the case of the Debtor, emergency authorization to use Cash Collateral or, in the case of Santander, relief from the automatic stay

5

under 11 U.S.C. § 362, and permission to recover and take possession or control of all or a part of its collateral.

10. This Order shall not effect a waiver or relinquishment of any rights that the Debtor or Santander have under the Forbearance Agreement, the Bankruptcy Code or at law including, but not limited to: (a) Santander's right to seek any other or supplemental relief in respect of the Debtor, including the right to seek additional adequate protection or restriction on the use of Cash Collateral (without prejudice to any other person's right to object to or otherwise oppose such additional adequate protection or restriction on the use of Cash Collateral); (b) Santander's right to assert any other rights, remedies, or defenses available to Santander and to respond to any motion, application, proposal, or other action, all such rights, remedies, defenses, and opportunities to respond being specifically reserved by Santander; or (c) any of the rights or remedies of Santander under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay imposed by § 362, and (ii) request dismissal or conversion of this chapter 11 case. Nothing herein shall be construed to impair Santander's rights to seek the payment of default interest and the payment of attorney's fees and expenses from the Debtor.

11. Nothing in this Order authorizes the disposition or use of any collateral outside the ordinary course of business without the prior written consent of Santander.

12. This Order and any other cash collateral order of the Debtor shall be binding on a subsequently appointed chapter 11 or chapter 7 trustee of the Debtor's estate.

13. This Order is without prejudice to: (a) any subsequent request by a party-in-interest for modified or further adequate protection or restrictions on use of Cash Collateral; or (b) any other right or remedy which may be available. This Order does not impose upon Santander any obligation (and Santander's consent to the entry of this Order does not constitute its actual or

implied consent) to pay, whether directly or indirectly by charge against its collateral or otherwise, any pre or post-petition obligation of the Debtor arising from the operation of its business, or in connection with its efforts to restructure.

14. The provisions of this Order are without prejudice to the rights of the United States Trustee to appoint a committee or any rights of a duly appointed committee to challenge the validity, priority or extent of any lien(s) granted by this Order or asserted by Santander.

15. The Court shall retain jurisdiction to enforce the terms of this Order. The provisions of this Interim Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court. If any provision of this Interim Order is hereafter modified, vacated or stayed by an order of this Court or another court, such stay, modification or vacation shall not affect the validity and enforceability of any lien, security interest or priority granted to Santander prior to the date of such stay, modification or vacation.

16. The interim authority granted herein shall continue until November 22, 2019, at 10:30 AM, at which time the Court has scheduled a further interim hearing to further consider the use of Cash Collateral.

###

Attorney R. Scott Shuker is directed to serve a copy of this Order on interested parties and file a proof of service within three (3) days of entry of this Order.

**Exhibit "A"**

Sunco Trucking LLC (Debtor-In-Possession)
Cash Collateral Plan

| | 10/4/19 | 10/11/19 | 10/18/19 Actual | 10/25/19 | 11/1/19 | 11/8/19 | 11/15/19 | 11/22/19 |
|---|---|---|---|---|---|---|---|---|
| **Accounts Receivable** | | | | | | | | |
| Beginning Balance | $ 4,512,585 | $ 4,338,600 | $ 4,340,941 | $ 4,290,341 | $ 4,328,980 | $ 4,393,697 | $ 4,339,992 | $ 4,195,620 |
| Invoices Generated | $ 478,533 | $ 457,828 | $ 479,332 | $ 429,861 | $ 482,447 | $ 480,555 | $ 480,555 | 480,555 |
| Cash Receipts | $ 652,518 | $ 455,487 | $ 529,932 | $ 391,222 | $ 417,730 | $ 534,260 | $ 624,928 | 514,343 |
| Unbilled | | | | | | | | |
| Ending Balance | $ 4,338,600 | $ 4,340,941 | $ 4,290,341 | $ 4,328,980 | $ 4,393,697 | $ 4,339,992 | $ 4,195,620 | $ 4,161,832 |
| | | | | | | | | |
| **Cash Activity** | | | | | | | | |
| Beginning Balance | $ 293,753 | $ 371,491 | $ 492,834 | $ 605,999 | $ 614,658 | $ 364,060 | $ 324,772 | $ 372,065 |
| Add: | | | | | | | | |
| Customer Deposits | $ 639,106 | $ 456,610 | $ 530,001 | $ 403,894 | $ 410,822 | $ 534,260 | $ 624,928 | $ 514,343 |
| Miscellaneous Receipts | $ - | $ 6,241 | $ 6,341 | $ - | $ - | $ - | $ - | $ - |
| Miscellaneous Adjustments | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Other Deposits | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Deposits | $ 639,106 | $ 462,851 | $ 536,342 | $ 403,894 | $ 410,822 | $ 534,260 | $ 624,928 | $ 514,343 |
| | | | | | | | | |
| Less Withdrawls: | | | | | | | | |
| Operating | | | | | | | | |
| Payroll, Taxes & Fees | $ 181,223 | $ 3,648 | $ 182,962 | $ 87,756 | $ 188,071 | $ 117,017 | $ 192,000 | $ 105,000 |
| Settlements | $ 64,475 | $ 93,976 | $ 43,100 | $ 49,267 | $ 41,797 | $ 67,585 | $ 50,387 | $ 50,387 |
| Fuel | $ 96,314 | $ 88,764 | $ 30,026 | $ 131,776 | $ 96,318 | $ 149,258 | $ 149,927 | $ 149,927 |
| Equipment Rent | $ - | $ - | $ - | $ - | $ - | $ 12,576 | $ 1,288 | 1,288 |
| Insurance | $ - | $ - | $ - | $ 1,678 | $ - | $ 148,322 | $ - | $ 2,480 |
| Taxes | $ - | $ - | $ - | $ - | $ 5,455 | $ - | $ - | $ - |
| Repair & Maintenance | $ 8,782 | $ 3,545 | $ - | $ 5,350 | $ 47,374 | $ 99,493 | $ 104,777 | $ 105,560 |
| Professional Service | $ - | $ - | $ - | $ 5,145 | $ 3,835 | $ 22,458 | $ 4,738 | 4,919 |
| Management Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Rent | $ - | $ 13,000 | $ - | $ - | $ - | $ 13,000 | $ - | $ - |
| Other COS/SG&A | $ 13,688 | $ - | $ 40,456 | $ 12,162 | $ 37,803 | $ 10,128 | $ 9,364 | $ 9,897 |
| Undefined | $ 2,646 | $ - | $ 2,542 | $ - | $ 1,367 | $ - | $ - | $ - |
| Intercompany Expense Recoup. | $ - | $ - | $ 84,091 | $ 2,101 | $ - | $ (154,142) | $ - | $ - |
| Banking Error (Misc Debit posted after Wire) | $ 179,040 | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Critical Vendor Pre-Petition Balance Payment Plan (12 Weeks) | $ - | $ - | $ - | $ - | $ 4,420 | $ 29,735 | $ 29,735 | $ 29,735 |
| Fuel Vendors Pre-Petition Balance Payment Plan | $ - | $ 49,695 | $ - | $ - | $ 35,901 | $ - | $ - | $ - |
| Total Operating Activities | $ 546,368 | $ 252,628 | $ 383,177 | $ 295,235 | $ 462,341 | $ 515,431 | $ 542,217 | $ 459,194 |
| | | | | | | | | |
| Financing Activities: | | | | | | | | |
| Debt Service | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Withdrawals | $ 546,368 | $ 252,628 | $ 383,177 | $ 295,235 | $ 462,341 | $ 515,431 | $ 542,217 | $ 459,194 |
| | | | | | | | | |
| Interbank Activity | | | | | | | | |
| KJMCTF Management Fees | $ (15,000) | $ (88,880) | $ (40,000) | $ (100,000) | $ (199,079) | $ (58,117) | $ (35,417) | $ (35,109) |
| Ending Depository Balance | $ 371,491 | $ 492,834 | $ 605,999 | $ 614,658 | $ 364,060 | $ 324,772 | $ 372,065 | $ 392,104 |
| | | | | | | | | |
| Total Collateral | 4,710,091 | 4,833,775 | 4,896,340 | 4,943,638 | 4,757,757 | 4,664,764 | 4,567,685 | 4,553,936 |